The court now calls case 120315, Patrick M. Blanchard v. Joseph Berrios. Are you ready to proceed? Yes, Your Honor. Your Honors, good morning. May it please the court, counsel. My name is Paul Castiglione and I'm here to represent Assessor Joseph Berrios in this case. Your Honor, the constitutional issues in this case turn really on two phrases. County government and the county. Now, plaintiff inspector general has argued that he has the power to subpoena personnel records and documents about the processing of homestead exemptions from the assessor's office because the assessor, in his view, is part of a larger group known as county government. But the phrase county government has no meaning under the Constitution. Now, section 2-283 of the county's IG ordinance states that the purpose of the inspector general is to detect, deter, prevent corruption, fraud, etc. with regard to misconduct in the operation of county government. The ordinance, however, does not define the phrase county government. And as I said, the Illinois Constitution does not refer to county government either. But it does refer to counties. Article 7, section 6A refers to a county and it sets forth the basis for home rule power that a county may exercise if it qualifies. Now, I think what this case is really about is plaintiffs, for them to prevail, they need this court to adapt their interpretation of county government or their phrase county government to include not only the county itself, but also body politic and corporate, but also all county offices. We submit this proposed definition would render the IG ordinance unconstitutional as applied as it cannot be squared with Article 7, section 4C, or the court's decision in Moy v. County of Cook interpreting Article 7, section 4C. In Moy, the question was presented whether or not an employment relationship or some sort of other legal relationship existed between the county of Cook and the sheriff, a county officer created under Article 7, section 4C. This court held that no such relationship existed. There is no principal agent relationship between the county and the sheriff. They're separate and independently elected offices. And the sheriff has the authority to manage and operate his office and is responsible for doing so. Same thing applies to the assessor. So the only way this court I submit can construe the phrase county government as used in the IG ordinance in a way that does not conflict with Article 7, section 4C or Moy is to interpret county government to mean only the county of Cook itself. And it's an established principle courts should interpret ordinances and statutes in a way if possible to render them constitutional. I submit that's the only way to render this ordinance constitutional as applied here. So I guess what springs from that is our view that the county of Cook cannot investigate matters unless it has statutory or a home rule authority to do so. Plaintiffs have not suggested they have statutory authority to do this. So really the focus is on home rule. A home rule unit does not have the power to authorize an employee, and that's ultimately what the inspector general is, to investigate matters in a separate and independently elected office unless those matters pertain to the county's government affairs. So this case is about a basic but fundamental constitutional principle, limits of home rule power. Both the county and its inspector general have to live within the boundaries that the Illinois Constitution has set. The county cannot empower one of its employees to subpoena employees of a separate office, place such employees under oath, or subpoena documents unless the subject of an investigation pertains to the county's government affairs. We've acknowledged in our briefs that the decision to expend funds does pertain to the county's government affairs. This court so held in Allen v. County of Cook, we don't dispute that. But I think what the plaintiffs proposed to do here would go a step far beyond Allen. Allen says yes, how the county decides to spend money is subject to their government affairs, and it's something the county has home rule power to legislate about. But this would go to the next step. Not just the spending of money, but how that office, the county funds many offices, state offices, county offices. The principle law being proposed here would give the county authority, home rule authority, it would say the operations of those offices themselves are within the county's government affairs. That goes beyond Allen, that goes beyond any home rule case that I've seen from this court or from any Illinois court. Now, the county does have spending authority, but even there, spending decisions are not without limit. As this court recognized in Kuczynski v. County of Cook, the issue there was whether or not the circuit clerk in Cook County at the time had the authority to enter into a contract to purchase a computer. This court held that she did not, that it was the county's authority, obligation in the first instance, but there are limits. And what this court said was, so long as the spending decisions, in that case of the circuit clerk, did not imperil, I'm sorry, so long as the spending decisions of the county, excuse me, did not imperil the operation of the circuit clerk's office, the separation of powers was not invaded, or the separation of powers provision was not implicated in any way. Answer that. Yes, about that case. Was the separation of powers between the clerk's office and the county? In that case? Or was it between the county, the executive, and the clerk as a member of the judicial branch? I read it as being between the legislative arm of the county board and the separate office of the circuit clerk. So, in other words, the county board has the obligation under state law to fund the circuit clerk's office. But could that do so in a way that rendered the circuit clerk unable to operate her office? And I always thought that was a good balance. That in Paczynski, what the circuit clerk was trying to do was basically make her own decision on what equipment to purchase, while the county's code, actually the clerk of the courts act, well both I think, imposed that obligation on the county. But I think this court recognized there has to be some give and take. And ultimately, the county, while it had spending authority, was limited by separation of powers not to use the power of the purse to disable the operation of the very offices it's obligated to fund. And here, I would say the investigation that was undertaken and the subpoenas issued to the assessor's office did not pertain to the county's government affairs. The subpoenas were for an employment personnel record for one employee in the assessor's office, and for the history of applications for homestead exemptions by two different property owners. I might add, too, that one of the positions the assessor's office took was that the IG at every, certainly able, and this is in the record, the assessor said this in a letter, if you want to send a FOIA request for this information, we'll be glad to give it to you, but we don't believe you have the power to subpoena it. And that's the position the assessor took below, in the trial court, appellate court, and we take now. And I would ask, too, and I think to kind of underscore the fact that the documents that the IG was requesting really do not pertain to their government affairs. I think we used the example that if the IG actually got the documents, I think this is in our reply brief, he would be analogous to the proverbial dog that caught the fire engine. What could he do with it? What could the county do with it? The documents do not relate to any actions that could actually take with respect to the assessor's office. The county has no power to discipline an employee of the assessor. The county cannot fire, hire, or fire employees of the assessor. If a mistake or error was made in the processing of a homestead exemption, the county is powerless to correct it. If the county disagreed with a decision, a particular decision in the assessor's office with regard to the processing of a homestead exemption in a particular year, that would not relieve the county from statutory responsibility in the following year to fund the assessor's office. So this is information, while maybe there was some general interest in the information, it did not pertain to anything that the county could actually do. Now, and just to reemphasize, we know from MOI the county does not have a principal-agent relationship with the assessor's office. And the county has no oversight role with regard to the operation of the assessor's office. And I think that's the key point here. The statutory and constitutional scheme that we have here, the Constitution gives, Article 7, Section 4C, gives the assessor the obligation and the duty to oversee and manage his office. The Property Tax Code gives the Illinois Department of Revenue oversight over the assessor's management of his office. Those, under the law, are the public officials with the obligation and the responsibility to oversee this process. The county does not have a role. They indicate, for example, the Department of Revenue is charged with directing and supervising assessments of all property, ensuring the equality of all assessments, and prescribing rules that are binding upon various local assessment officers, such as the assessor barrios. The Cook County assessor is required to utilize forms that the Department of Revenue generates and follow any instructions of the Department of Revenue. Now, interestingly, the Department of Revenue may request the institution of proceedings, actions, or prosecutions to enforce provisions of the Property Tax Code, may order reassessments, and may take evidence and testimony under oath, and may issue subpoenas and compel the attendance of witnesses to conduct an investigation. So, clearly, the type of work that the IG was attempting to do here is something that, if it belongs anywhere, it's in the bailiwick of this Department of Revenue. Now, the plaintiff has argued, in contrast, that the IG and the county have formal authority to investigate the manner in which the assessor's office processes applications for homestead exemptions due to the county's power to regulate public morals. In support of this argument, the IG cited Palm v. 2800 Lake Shore Drive Condo Association. Palm did not obliterate all limits and boundaries for the exercise of home rule authority. To the contrary, Palm cited a two-part test determining whether a subject pertains to the government affairs of a home rule unit. And under the first part of the test, courts of this court had to determine, is the subject matter the subject of a vital state policy, or does it pertain to, is it a subject pertaining to local government? There are two vital state policies at play here. One is the Illinois Constitution, particular Article 7, Section 4C, and the other is a property tax code. So we submit, based on Palm, the subject here is a matter of vital state policy, and is not subject to regulation by the county. Now, the appellate court will locate two rationales explaining, in its view, why the investigation, the subpoenas at issue, related to the county's government affairs. And the first one, the first explanation is that the county benefits financially from the raising of real estate tax revenue. There are two problems with this rationale. First, the county is one of hundreds of taxing districts within Cook County that receive real estate tax revenue. And under the logic of the appellate court's decision, theoretically, inspectors general from every taxing district could investigate the assessor's office. Such a result would be ludicrous. That can't be right. And the second problem with that is that the appellate court simply assumed that the granting of homestead exemptions lowers the amount of tax revenue collected, and that's not the case. At most, the granting of homestead exemptions would change who's paying taxes, but not their amount, not the amount collected. The second rationale that the appellate court offered was that, look, the county funds the assessor's office, therefore its operation pertains to the county's government affairs. Well, as I've indicated, this rationale is not only contrary to Allen but also to Article 7, Section 4C, Article 7, Section 6A, and more. No court, as I stated before, has interpreted home rule to mean that the operation of every office of the county funds would pertain to its government affairs. In his brief, the plaintiff described this argument as an interim argument, saying he suggested that the rationale of the decision, the appellate decision will be extended to state offices, such as the court system or the circuit court. That's not an interim argument. It's a logical extension of what the appellate court has already held. And while the plaintiff has indicated, he stated in the brief there's no desire, he has no desire to investigate issues with regard to the operation of state offices. There will be future IGs. And, after all, what this case is about is setting the boundaries for what's appropriate subject matter for an inspector general investigation, a Cook County inspector general investigation, and what is that. Another argument that came up in the briefing was whether or not this court's decision in Ferguson v. Patton pertains to whoever has any application. We submit it really doesn't. And for one simple reason, the city is not the county. It's not analogous to the county. The city has department heads. Those department heads are not analogous to independently elected constitutional officers, such as the assessor or the treasurer or the sheriff who would have an account. Could you address for a moment the expression constitutional officers? That's an expression that you used throughout your brief. Historically, I've always thought that meant the state executive officers. Why are you saying the assessor is a constitutional officer? Well, the Constitution created them. The difference, for example, between the Corporation Council for the City of Chicago and the state's attorney is that the Illinois Constitution created the state's attorney and that, in the case of the state's attorney, her powers are constitutional in nature and, as such, cannot be abrogated by a legislature or even by the court. So I think that's what I'm getting at, that there's a dimension there under the Constitution that would not exist with a department head in the City of Chicago, such as the Corporation Council. But in the section of the Constitution on local government, it allows counties to choose whether or not to elect an assessor. Correct? That's absolutely correct. And here they have not opted to not elect the assessor. So because they've decided in Cook County to elect the assessor, ultimately he's accountable to the voters, which would not be true for any department head in the City of Chicago. They would also be accountable to the mayor, who in turn is accountable to the voters. Sure. Under Article 7, Section 4, City of the County, any county could change that. That hasn't happened here. Counsel, it seems to be your position that the assessor is a separate unit of local government in and of itself. I'd say a separate office. It's not a unit of local government like, say, a village, but a county office. Yes. Within the Constitution, I thought it declared that, quote, unit of local government means counties, municipalities, townships, special districts, and units designated as units of local government by law. That's right. Can you cite any law that designates the assessor's office as a unit of local government? I can't, and I wouldn't. I don't think it is. I think it's a county office, just as the sheriff is. But I think, you know, that's an issue plaintiff has raised, but I think it's a distinction here without a difference. We've cited cases such as the Village of Rosemont case, the Village of Bridgeview, the City of Highland Park case, where in all of those cases, a home rule unit attempted to regulate subject matters, legislate with regard to matters that pertain to the government affairs of a different unit of local government. That principle applies here, even though the assessor is not a unit of local government. He's a separate office. Aren't those cases, Rosemont, Bridgeview, City of Highland Park, aren't they distinguishable in the sense that home rule municipalities in those cases enacted ordinances that expressly conflicted with ordinances or statutes of Cook County? That's true in all those cases. I still think they're instructive here, Your Honor, because it illustrates that a home rule unit has to stay within its bounds. It has to legislate matters pertaining to its own government. But you agree there's no conflicting ordinances involved in this case? No. I don't know. And the last two points I would make, I see I'm starting to run a little bit out of time. Plain and polite on the Loop Mortgage case from the First District, that case we believe is distinguishable. The appellate court in Loop Mortgage was not presented with the question of whether the Cook County, or the county board, rather, had constitutional authority to interfere with the inner workings of an independently elected officer. Rather, the court there simply had to ascertain whether the county board had home rule authority to adopt an ordinance that would assist an independently elected officer in performing her duties. What that case involved was a tax billing information statement. The county board created that. And the recorder of fees would ask someone who was about to record an instrument to voluntarily fill that out. If they didn't want to, they didn't have to. But if they did, there was a $2 fee. And the purpose of that was to make it easier to collect tax revenue. That's very different than what we're talking about here, which is the question of whether or not the county has authority to be able to investigate matters that we submit do not pertain to their government affairs. Your Honors, unless there are further questions, I'll save my remaining time for revolve. Thank you. Thank you. Good morning, Your Honors. My name is Alexander Polikoff. I represent the plaintiff, the Inspector General, the independent Inspector General of Cook County, Patrick Blanchard. As I listened to the assessor's presentation this morning and read his briefs, I believe I discerned four arguments. There's a preemption argument, a home rule argument, an interference argument, as I call it, and a subpoena argument. With Your Honors' leave, I'll address each of those four arguments in that order. The preemption argument is that the legislature intended to invest, in the assessor and the revenue department, exclusive jurisdiction over homestead exemption applications, and that therefore the Inspector General's attempt to investigate possible corruption that may have occurred in that area is preempted by this, quote, vital state policy of investing exclusive jurisdiction in the revenue department. There are two things wrong with that argument, Your Honors. One is it's a classic example of the very judicial preemption that this court has rejected in the Palm case where you said, with deference, I'm going to quote some of your own words back to you. You're probably very familiar with them, but I think they're important, quote, We have consistently recognized that the home rule provisions of the Illinois Constitution are intended to eliminate or at least reduce to a bare minimum the circumstances under which local home rule powers are preempted by judicial interpretation of unexpressed legislative intentions. If the constitutional design is to be respected, you went on in the Palm, the courts should step in to compensate for legislative inaction or oversight only in the clearest cases of oppression, injustice, or interference by local ordinances with vital state policy. That's the end of the quote. But it springs, of course, from the Constitution, which in Article 7, Section 6I says that a home rule unit may exercise, this is the constitutional language, concurrently with the state any power or function of a home rule unit to the extent that the General Assembly does not, by law, specifically limit the concurrent exercise or specifically declare the state's exercise to be exclusive, end quote. Now, here, Your Honors, in this case, where we have no express presumption, and the assessor doesn't argue in his briefs or here this morning that there is an express presumption, it would clearly run counter to the judicial restraint purged by both Palm and the Constitution to find preemption here. So that's the first thing wrong with the preemption argument. Second thing wrong with it is that the assessor's preemption argument lacks a vital state policy with which to do its preempting. There ain't any. Oh, yes, the assessor refers to a policy of exclusivity regarding homestead exemptions, which he purports to find in the legislation, even though the word exclusive isn't there. But policies regarding homestead exemptions are not the subject of the IG's proposed investigation, any more than if a corruption investigation involved the purchase of tea carols. Would we say that tea carol policy, not corruption, was the focus of the investigation? So we're back to the default mode provided for by the Constitution. Home rule units may exercise concurrently with the state any home rule power that's not specifically limited or declared to be the state's exclusive province. And applying that default mode to this case means that Cook County, as a home rule unit, is not barred by preemption from investigating possible corruption in the Cook County's assessor of office. The second of the assessor's four arguments is about home rule. The argument here is that even if there's no preemption, the assessor is such a public entity or public body, he uses both of those phrases, that the extraterritorial cases, like the Rosemont case you asked about, apply, meaning that the county has no home rule authority over the assessor's office and cannot legislate with respect to it because regardless of the nomenclature, we should treat it as a separate unit of government. Here, too, your honors, there are two things wrong with this argument, this home rule argument. One is that the assessor is plainly not separate enough from the county of which he is an officer to render those extraterritorial cases applicable as if he were a separate unit of government. How do we know that? We know it because of Article 7, Section 4D of the Constitution, which says that each county officer, I'm quoting now, shall have those duties provided by law and those provided by county ordinance. Obviously, when Section 4D of the Constitution says that a county can impose duties on its county officers, the section does not treat the assessor's office as separate enough from the county to preclude the county from providing duties to it, imposing duties on it. And the fact, of course, that the assessor is elected rather than appointed makes no difference because Section 4D doesn't say except if the county officer is elected. It says county officers, period. That's the first thing that's wrong with the home rule argument. The second thing that's wrong with the assessor's home rule argument is that it erroneously assumes that the county needs home rule authority to impose the duty of cooperation upon the assessor. Not so. It doesn't need home rule authority. That's clear from the selfsame Section 4D of the Constitution, which is itself an explicit, unambiguous grant of authority to counties, all counties, not just home rule counties, to provide duties to their county officers. But, Your Honors, even if home rule authority were needed, in this case, the county has it. Home rule authority depends on the meaning of the word pertain. Does the matter to which the power is directed pertain to the government and affairs of the governmental unit exercising the power? The answer here, I submit, is plainly yes. The negative answer is fundamentally counterintuitive. As the appellate court said, quote, the corruption of county officials pertains to the county's government and affairs within the meaning of the Constitution. And the trial court said, investigating possible corruption within one of the county's offices so obviously pertains that it, quote, could hardly be disputed. In the dictionary, what does pertain mean? It means to have some connection or relation to or belonging to something as a care or concern. So how counterintuitively does the assessor argue that possible corruption in his office is not a care or concern of the county of which he is an officer? Well, his argument is the one we've already dealt with, I've already dealt with, that he is so separate from the county that extraterritoriality applies, an argument, as we have seen, that runs head-on into Section 4B of the Constitution, runs into that constitutional wall. So that's the second thing wrong with the Home Rule argument. And that brings us to the assessor's third argument, namely that investigating corruption impermissibly interferes with his operation of his office. Variously he calls this seizing property tax information, managing the day-to-day operations, and so on. But apart from the rhetoric, I submit to your honors that this argument boils down to the one legally cognizable form of interference that would, if it were present under the cases, be a problem. That is, stripping away or removing any of the constitutional, statutory, or common law powers of the assessor's office. If we were doing that, we'd be in deep trouble. Cases say you can't do that. The Walsh case, you remember, the one involving the sheriff, where an attempt was made to transfer away from him custody and control of the jail. Can't do it. But here, nothing is taken away from the assessor. Rather, a new duty is added, which is just what the Constitution speaks of, of course. So why does the assessor contend that something is taken away? And what is the something that he contends is being taken away? Well, according to the reply brief, this is at pages eight to nine, what is taken away, believe it or not, is the assessor's ability to operate his office free from investigation by the county board. Assessor's ability to operate free from investigation by the county board is what's being taken away. In other words, the argument is that by imposing the duty to cooperate, we strip away the ability to operate free from the duty to cooperate. Now, obviously, Your Honors, if that reasoning were to be accepted, Section 4D of the Constitution would be eviscerated. For every imposition of a duty necessarily removes the freedom to operate without it. So the language of Section 4D is a conclusive answer to the assessor's third argument, that a corruption investigation impermissibly strips away one of his powers. Okay, the fourth and final argument has to do with the subpoena. You know from our brief we believe this is a red herring of an issue. This case is really about the duty to cooperate, the imposition of that duty. And that duty, imposition of that duty, remains the central issue in the case, would be the central issue, even if no subpoena had ever been issued. It's a red herring issue in another way, too, Your Honors. For the assessor concedes that a home rule county, this is at his initial brief, page 15, he concedes that a home rule county does have power to authorize subpoenas on matters that pertain to its government and affairs. So if, as I hope I've persuaded you, that investigating possible corruption within a county office does pertain to the government and affairs of the county, as the courts below held, no issue regarding the subpoena survives as any freestanding independent question. Any other specific arguments about the subpoena will rely on what we say in our briefs. I'd like to close, Your Honors, on a different note. Corruption impels democracy by eroding the trust that citizens place in their public officials. Measured by the size of its budget, Cook County is one of our nation's largest governments. I urge upon you that it is important to our democracy to uphold the power of Cook County government to deal effectively with possible corruption among its officials. Unless there are questions, I thank you for your interest. Thank you, Counsel. Your Honors, at the end of Mr. Pollack's remarks, he again went back to county government, which goes back to where it started in the argument that there is no such animal, basically, under the Illinois Constitution. There are counties, there are county offices. You can't blend them together into one hybrid, which I think is what he's attempting to do here. But I think it's happening. There's the geographic area of Cook County, or the county of Cook. But the geographic area of Cook County has been conflated with the legal entity, the county of Cook, which is a body of politics incorporated. Again, I don't see how the other offices, like the sheriff, the assessor, can be considered part of a single whole under some of the rubric of county government and be consistent with this Court's decision in Illinois. I think that those two concepts just cannot be reconciled. Counsel referred to the IG as the independent inspector general. I'd like to comment on that for a second. I know that's his title, and with all due respect, he's still a county employee. And that's, to some degree, what this case is also about. Can home rule be used to concentrate power in the county of Cook? Is it a vehicle through which the county of Cook's powers can be greatly expanded? Home rule, after all, was designed to give units of local government the tools with which to deal with problems closest to them. Theory being, if you're closest to the problem, you have the best understanding of it and the best ability to be able to solve that problem. It was not designed to be able to take independent offices and put it within the ambit, their operations within the ambit of the county. This would expand what plans are proposing would expand the powers of home rule counties. They would have the matters of the independently elected offices, their operations would be within the government affairs of the county, and we feel that's just not what the constitution over case law in this court ever intended. Past the palm, there is a vital state policy. There's two of them, the constitution and the property tax code. I would like to focus on the property tax code for a moment, which gives great oversight power to the Illinois Department of Revenue over the assessor's office. Listening to the counsel made it sound as though whatever the assessor did, without the intervention of Cook County, of the county of Cook, the body of politics, I should say, would remain without oversight, without regulation, and that's simply not the case. The property tax code gives the authority to the Department of Revenue to do that very oversight. The interpretation of the IG ordinance that plans proposed would eat right into that. There is a vital state policy in giving effect to the property tax code. Under palm, this is not a matter of, not a local matter, this is a state matter. Counsel brought up the example of, well, what if the county brought a number of tea kettles, presumably to be delivered to some county office? Couldn't the inspector general investigate that? Yes, he could. But let's look at that. The purchase, and we've acknowledged, how the county spends its money, the decision to spend money under ALM relates to the county's government affairs. So the county brought a number of tea kettles, and it's supposed to be delivered to the sheriff's office. There was some concern that they never were delivered, or perhaps they were delivered and disappeared. Could the county look into that? Sure. But that's very different from looking at how the sheriff runs the jail, or how the assessor processes homestead exemptions. Now, there's much discussion in Planner's presentation about Article 7, Section 4D. We don't dispute that the county can add duties to the assessor. They clearly can. But every action any county takes has to have some authority. If it's a non-home rule county, there has to be a legislative basis for it. In the case of Cook County or any other future home rule counties, they also can take actions provided they have home rule authority to do so. So the fact that they can impose additional duties on the assessor, I think, kind of begs the question. Yes, they can, but they have to have authority to do so in the first place. One last thing, counsel, or two last things. Counsel asks, is anything taken away by giving this power to investigate the assessor's office to the county? I say yes. Two things are infringed. The assessor's right to manage his own office, to discipline employees, which, by the way, happened in this case. The matters that the IG were interested in, ultimately, there was discipline taken. That is infringed. But how about the Department of Revenue, which has oversight over the assessor? That's infringed as well. Finally, the county of Cook and its inspector general certainly investigate corruption in its own office. No one is suggesting otherwise. Our elected offices have to figure out how to deal with those kind of issues on their own. Some have inspectors, John, but it's up to them. Ultimately, those independently elected officials have to answer to the voters. That's really the answer in a democracy. What is not an answer in a democracy is to have someone elected and give another office, which has no relation to it other than the fact that the state orders them to fund the first office and give them the power that really should reside with the independently elected official in the first place. If this court has no further questions, we ask that you reverse the decisions of the circuit and the health courts. Thank you. Thank you. Case number 120315, Patrick M. Blanchard v. Joseph Berrios, will be taken under advisement as Agenda 17. Marshal, the Supreme Court will take a recess. Thank you to Mr. Castiglione and to Mr. Paltrow on your arguments this morning.